IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-0010-RBJ

ROBERT BAKER,

      Plaintiff,

v.

ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY,
ALLSTATE INSURANCE COMPANY, and
NATIONWIDE MUTUAL INSURANCE COMPANY,

      Defendants.

---

AMENDED ORDER on Pending Motions for Partial Summary Judgment

---

This case was originally filed in Mesa County District Court (case number 2011CV4746). [Docket #1]. Defendants removed the case to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(b). *Id.* This comes before the Court on defendant Allstate's Motion for Partial Summary Judgment [#40]; defendant Nationwide's Motion for Partial Summary Judgment Regarding Primacy [#41]; defendants Allied and Nationwide's Motion for Summary Judgment as to Medical Payments Coverage Claims [#65]; and defendants Allied and Nationwide's Motion for Summary Judgment Regarding Underinsured Motorist Claims [#66], in which defendant Allstate joined [#67]. On March 19, 2013, the Court held oral argument on the four motions and took the matters under advisement. [#81]. This order addresses all pending motions.

## I.  Background Facts

Robert and Roberta Baker were involved in a car accident on July 19, 2008, when their 2000 Chrysler car ("Chrysler") was rear-ended by a vehicle driven by Kelly Cook.  The plaintiff, Mr. Baker, was the passenger in the Chrysler.  Ms. Cook held an insurance policy with Viking Insurance Company ("Viking Insurance") with a policy limit of $25,000.

The Chrysler owned by the Bakers and involved in the accident was insured by Allstate for underinsured motorist ("UIM") benefits up to $100,000 per person.  Mr. Baker also had a business auto insurance policy with Nationwide for up to $300,000 per person.[1]  The Nationwide policy identifies the "covered auto" under the policy as a 2000 GMC 1500 Pickup truck ("GMC"), which was not involved in the accident.  The Nationwide policy also provided for medical payment coverage up to $5,000 per incident.  Both policies were in effect on July 19, 2008, the date of the accident.

Mr. Baker accepted Ms. Cook's policy limit with Viking Insurance of $25,000, but he incurred injuries and other losses exceeding the $25,000.  Therefore, he made a claim with both Allstate and Nationwide for UIM benefits.  Mr. Baker also made claims for medical payment ("med-pay") benefits with Nationwide.  Mr. Baker is now suing Allstate and Nationwide for breach of contract for failure to pay UIM benefits; Nationwide for breach of contract for failure to pay medical payment benefits; and Allstate and Nationwide for bad faith breach of insurance contract and unreasonable denial of the respective benefits.

---

[1]   Although it is not at issue on these motions, Allied's connection to the case is unclear. Nationwide claims that Allied "is a stranger to the insurance contracts and not properly a party." [#41] at 2.  Where argument is by both Allied and Nationwide (i.e., on motions #66 and #67 and related filings), I refer to them collectively as Allied/Nationwide.

## II.  Standard of Review

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).  When deciding a motion for summary judgment, the Court considers "the factual record, together with all reasonable inferences derived therefrom, in the light most favorable to the non-moving party . . . ." *Id.*  When the movant does not have the ultimate burden at trial, it may succeed on a motion for summary judgment when it has shown the court that there is an absence of evidence to support the nonmoving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In challenging such a showing, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.  Allstate's Motion for Partial Summary Judgment [#40] and Nationwide's Motion for Partial Summary Judgment Regarding Primacy of UIM Coverage [#41]

Because Allstate and Nationwide filed cross-motions on the issue of primacy of insurance coverage for UIM benefits [##40, 41], I resolve both motions together.

### A.  Relevant Facts

The Chrysler in the July 19, 2008 accident was under a personal Allstate policy held by Mr. Baker.  The pertinent portion of the Allstate policy states:

If There Is Other Insurance

If the insured person was in, on, getting into or out of, or getting on or off, a vehicle which is insured for this coverage under another policy, coverage under

3

> this policy will be excess. This means that when the insured person is legally entitled to recover damages in excess of the other policy limit, we will only pay the amount by which the limit of liability of this policy exceeds the limit of liability of that policy.
>
> If more than one policy applies to the accident on a primary basis the total benefits payable to any one person will not exceed the maximum benefits payable by the policy with the highest limit for uninsured motorist coverage. We will bear our proportionate share with other uninsured motorist benefits. This applies no matter how many autos or auto policies are involved whether written by Allstate or another company.

[#40-4] at 11 ("Other Insurance Clause").

Nationwide's relevant policy comes in two parts.  The first part is the Business Auto Coverage Form ("Coverage Form") that covers that GMC.  [#40-6] at 17, 19, 27.  The UIM coverage is added through an Uninsured/Underinsured ("UM/UIM") Endorsement that modifies the Coverage Form.  The Nationwide Coverage Form provides:

> For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

*Id.* at 27.  The Nationwide UM/UIM Endorsement ("Endorsement") provides:

> 1. Other insurance in the Business Auto and Garage Coverage Forms . . . are revised as follows:
>
> . . .
>
> b. The following provisions are added:
>
> . . .
>
> (2) If there is another applicable insurance available under one or more policies or provisions of coverage:
>
> . . .
>
> (b) Any insurance we provide with respect to a vehicle owned by the Named Insured or, if the Named Insured is an individual, any "family member", that is not a covered "auto" for Uninsured Motorist Coverage under this Coverage Form, shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

[#40-7] at 21–22.

**B.  Allstate and Nationwide's Respective Arguments[2]**

Allstate moves for partial summary judgment [#40] that its UIM policy be considered co-primary with Nationwide's policy.  Nationwide, on the other hand, filed a cross-motion for partial summary judgment [#41] that its UIM policy be considered excess over Allstate's policy.

Allstate's logic is as follows: Allstate's UIM coverage is primary *unless* the Other Insurance Clause is triggered.  The trigger occurs when the insured person "was in . . . a vehicle which is insured for this coverage under another policy."  The first inquiry is then whether there is "a vehicle which is insured" for UIM benefits under another policy, i.e. the Nationwide policy.

Looking to the Nationwide policy, the Chrysler is not addressed by the two options in the excess clause of the Coverage Form—it is neither a "covered auto" that Mr. Baker owns nor a "covered auto" that Mr. Baker does not own.  The Nationwide Endorsement provides excess UIM benefits when the vehicle is owned by Mr. Baker but not a "covered auto."

Allstate argues that the Endorsement is void pursuant to *DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167 (Colo. 2001), because UIM eligibility under it is tied to a vehicle, not the insured person.  Without the Endorsement, Nationwide is left with its Coverage Form.  The Coverage Form only shifts from primary coverage to excess coverage when the insurance is for a "covered auto" not owned by Mr. Baker.  Because this shifting provision does not apply to the Chrysler, Nationwide's statutorily mandated UIM coverage for Mr. Baker remains primary.

Finally, referring back to the Allstate Other Insurance Clause, Mr. Baker was not "in . . . a vehicle which is insured for this coverage under another policy" because the Nationwide policy would not provide coverage *on the vehicle*—it provides UIM coverage on Mr. Baker.  Therefore, the Allstate policy also would be primary.  In a case where the insurers' policies are co-primary,

---

[2] Mr. Baker also filed a response, embracing much of the same arguments as Allstate.  [#49].

the insurers share an "apportionment on an equal basis up to the policy limit of each policy."

*Allstate Ins. Co. v. Avis Rent-A-Car Sys., Inc.*, 947 P.2d 341, 347 (Colo. 1997).

Allstate alternatively argues that, even if the Nationwide Endorsement is valid under

*DeHerrera* and applicable as an excess clause, then Allstate and Nationwide would become

competing excess insurers.  In other words, if Nationwide's policy covers the Chrysler—even as

excess—for UIM benefits, Allstate's Other Insurance Clause is triggered, and Allstate's

coverage also becomes excess.  Competing excess clauses are "mutually repugnant and void."

*Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 246 P.3d 651, 660 (Colo. 2011).  Essentially, they

act to cancel each other out, and the insurers are considered co-primary—i.e., sharing losses on a

dollar-for-dollar basis until the policy limits of one is exhausted.  *Id.*; *Allstate Ins.*, 947 P.2d at

347.

Nationwide disagrees with the above argument by Allstate on three grounds.  First,

Nationwide argues that Allstate's excess clause is inapplicable because the insured must be "in

. . . a vehicle which is insured for this coverage under another policy."  The Nationwide policy is

a business policy that only "covers," or insures, the GMC and not the Chrysler Mr. Baker was

"in."  Therefore, the Allstate Other Insurance Clause is not triggered, and Allstate's UIM

coverage remains primary.

Second, Nationwide objects to Allstate's reading of the Nationwide policy.  The

Coverage Form cannot be viewed alone, as it does not offer any UIM benefits.  UIM benefits are

only added through the Nationwide Endorsement.  The Endorsement states that Nationwide's

coverage, "with respect to a vehicle owned by [Mr. Baker] . . . , that is not a covered 'auto' for

Uninsured Motorist Coverage under this Coverage Form, shall be excess . . . ."  Therefore, with

respect to the Chrysler, a noncovered auto owned by Mr. Baker, Nationwide's UIM coverage can only be excess.

Third, Nationwide responds that the Endorsement, when applied to the Chrysler, would not trigger Allstate's Other Insurance Clause.  The Chrysler was not "a vehicle which is insured for this coverage under another policy" because Nationwide was providing UIM benefits for a "non-covered auto" when its excess policy covered the Chrysler.

### C. Conclusions

The resolution of the primacy issue rests first on whether *DeHerrera* invalidates either of the excess clauses.  "An insurer must offer UM/UIM coverage in an automobile liability or motor vehicle liability policy."  *DeHerrera*, 30 P.3d 167, 173 (Colo. 2001).  "Uninsured motorist coverage shall include coverage for damage for bodily injury or death that an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle."  C.R.S. § 10-4-609(4).  The statute "furthers the public policy declared by the legislature . . . 'to assure the widespread availability to the insuring public of insurance protection against financial loss caused by negligent financially irresponsible motorists.'"  *DeHerrera*, 30 P.3d at 174 (quoting Ch. 91, sec. 1, 1965 Colo. Sess. Laws 333.)

"Colorado has a strong commitment to the freedom of contract."  *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1047 (Colo. 2011).  Colorado courts have recognized the "general rule that insurers seeking to avoid liability must do so in clear and unequivocal language."  *Shelter Mut. Ins.*, 246 P.3d at 657 (quoting *Cyprus Amax Minerals Co. v. Lexington Insurance Co.*, 74 P.3d 294, 307 (Colo. 2003)) (internal quotation marks omitted).  Accordingly, "[e]ven within the context of statutorily mandated insurance, insurers are free to include 'conditions and exclusions that are not inconsistent with' Colorado's mandatory insurance laws.  For example, insurers may

include other-insurance clauses in policies providing statutorily-required coverage." *Bailey*, 255 P.3d at 1047 (upholding a UIM benefits exclusion on intentional or criminal misconduct by the insured) (internal citation omitted).  "This freedom to contract encompasses excess-insurance policies . . . ." *Id.*

"Normally, an excess clause attempts to shift the priority of payments as between coverages when two or more policies apply to the liability." *Allstate Ins.*, 947 P.2d at 346. "When one insurance policy is 'primary' and the other policy is 'excess,' the primary insurer pays for damages up to the limits of its policy; when that policy is exhausted, the excess insurer covers any remaining damages up to the limits of its policy." *Id.*

The Colorado Supreme Court case *DeHerrera* addressed the legislative intent and construction of the statute mandating UM/UIM coverage, C.R.S. § 10-4-609.  30 P.3d 167. DeHerrera's son was insured in an accident while riding a motorcycle; the other vehicle was underinsured.  *Id.* at 168.  The Sentry Insurance policy stated that it would "pay damages . . . the owner or operator of an uninsured motor vehicle is legally obligated to pay because of bodily injury you suffer in a car accident while occupying a *car* . . . ." *Id.* (emphasis added).  Sentry Insurance denied coverage because its policy definitions excluded from coverage persons occupying vehicles that are not four-wheeled motor vehicles, or "cars." *Id.* at 169.

The Colorado Supreme Court held in favor of DeHerrera and invalidated the provision. *Id.* at 176.  If a "policy provision violates public policy by attempting to 'dilute, condition, or limit statutorily mandated coverage[,]' then it may be void and unenforceable." *DeHerrera*, 30 P.3d at 173 (quoting *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 60 (Colo. 1990)). The court reasoned:

> The UM/UIM statute contains no provisions excluding protection for an insured based on the kind of vehicle an insured occupies at the time of injury.  Rather, it

simply states that UM/UIM coverage, if not waived by the named insured, must protect "persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." § 10–4–609(1). This phrase, "persons insured thereunder" means that insurers must provide UM/UIM coverage for the protection of *persons* insured under the liability policy that the insurer is issuing. Thus, the statute provides coverage for *persons*; it does not place geographical limits on coverage and does not purport to tie protection against uninsured motorists to occupancy in any kind of *vehicle.*

30 P.3d at 175 (citation and quotation marks omitted). UM/UIM insurance must be available to

an insured person "irrespective of the vehicle the injured insured occupies at the time of injury."

*Id.* at 176.

Allstate states in its motion and Nationwide agrees that "[p]ursuant to the parties' freedom to contract, there is nothing which precludes primacy issues from being addressed dependent on a vehicle's status." [#40] at 3 (citing *Bailey*, 255 P.3d 1039); [#48] at 2. Both counsel appeared to agree at the hearing that both excess provisions merely reallocate the "risk" of UIM coverage between insurance providers. Neither excess provision "takes away" the right to UIM coverage *in totality* as tied to a vehicle—which would violate *DeHerrera.*

Both UIM policies arguably determine their coverage as connected to a vehicle, not the insured person. Whether Allstate's policy is excess depends on whether the *vehicle* covered by another policy has the insured in it. Whether Nationwide's policy is excess depends on whether the *vehicle* is owned by the insured and not covered for UIM benefits under the Coverage Form otherwise. Allstate cannot have its cake and eat it too by suggesting that its excess clause is in compliance with *DeHerrera* while Nationwide's is not.

The Court nevertheless concludes that, even if both policies tie *primacy* of coverage to a vehicle, neither policy would deny UIM protection outright on that basis. If one policy is excess, the statutorily mandated UIM benefits would still be provided by the primary insurer.

In a recent 2011 case, *Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 246 P.3d 651, 656–57 (Colo. 2011), the Colorado Supreme Court upheld the validity of an excess clause that shifted general liability if another insurance policy was applicable.  The second insurer, to whom liability was being shifted, argued the excess clause eroded the Colorado statutory mandate that all drivers carry insurance.  *Id.* at 659–60.  The court upheld the clause and reasoned that "the excess clause cannot properly be considered a reduction in coverage.  Although it may effectively reduce the amount [one insurer] is liable on the policy, the owner [insured] enjoys the same coverage with or without the excess clause . . . ."  *Id.* at 660.  "[T]he requirement to purchase insurance should not be conflated with the issue of which insurer should be primary, and the public policy behind Colorado's mandatory insurance laws only requires that vehicle owners have coverage in effect."  *Id.*  Using an excess clause to apportion liability "does not affect insureds' coverage," and such clauses are valid under Colorado law.  *Id.*

Although the excess clause and the statutorily mandated coverage in that case did not pertain to UIM benefits, the Court finds its reasoning analogous and persuasive.  Here, the excess clauses—even if tied to a vehicle—do not erode the mandate that insurers provide UIM coverage.  The requirement to provide UIM coverage likewise should not be conflated with the issue of which UIM coverage is primary.  *See id.* at 660.  The two clauses here only reduce the amount of liability inasmuch as the other insurer is providing that coverage.  Therefore, even if their applicability is triggered by a vehicle-centric inquiry, the clauses do not "dilute, condition, or limit statutorily mandated coverage."  *DeHerrera*, 30 P.3d at 173.  I conclude that both excess clauses are valid under Colorado law.[3]

---

[3] I note that even if both clauses are invalid under *DeHerrera*, the outcome would be the same. Both policies would then not provide a clause that shifts its liability for UIM benefits to the other insurer; therefore, both policies would remain primary and share dollar-for-dollar liability.

Next, I turn to whether Mr. Baker was "in . . . a vehicle which is insured for this coverage under another policy," the triggering event for Allstate's Other Insurance Clause.  Here, the parties do not dispute that the Nationwide Endorsement would make Nationwide an excess insurer for UIM benefits with respect to the Chrysler.  Nationwide reasons that this excess coverage does not trigger the Allstate excess clause, however, because the Chrysler was not "insured" under Nationwide's policy—the GMC was.

Nationwide misses the point: Allstate's Other Insurance Clause reads "a vehicle which is insured *for this coverage* under another policy."  The issue is not whether the Chrysler was a "covered auto" under the Nationwide policy, but whether the Chrysler was insured *for UIM coverage* under Nationwide's policy.  The confusion may arise here because under the Endorsement, the Chrysler is insured for UIM coverage, albeit *excess* coverage.  However, in order to be triggered, the Allstate excess clause does not require that the Chrysler be *primarily* insured for UIM benefits under another policy; the plain language of the Other Insurance Clause does not specify the type of UIM coverage.  Accordingly, the Court finds that Mr. Baker was "in . . . a vehicle which is insured for this coverage under another policy" when the Nationwide Endorsement provides excess coverage for UIM benefits.

Because Nationwide's excess clause has triggered Allstate's excess clause, they are competing excess clauses, and the Court must treat the clauses as "mutually repugnant and void." *Shelter Mut. Ins.*, 246 P.3d at 660.  Therefore, both Allstate and Nationwide are co-primary and must share the losses on a dollar-for-dollar basis until the policy limits of one is exhausted.  *Id.*; *Allstate Ins.*, 947 P.2d at 347.

Accordingly, Allstate's Motion for Partial Summary Judgment [#40] is GRANTED and Nationwide's Motion for Partial Summary Judgment Regarding Primacy [#41] is DENIED.

**IV.  Allied/Nationwide's Motion for Summary Judgment as to Medical Payments Coverage Claims [#65]**

    **A.  Relevant Facts**

Allied/Nationwide's policy provides, through its Auto Medical Payments Coverage Endorsement, medical payment ("med-pay") benefits of $5,000 per person "for services rendered within three years from the date of the 'accident.'"  [#65-3] at 12, 51.  Mr. Baker settled with Ms. Cook, the tortfeasor, for her $25,000 policy limit with Viking Insurance.  From May 2011 and after the settlement, Mr. Baker's counsel sent several letters to Allied/Nationwide regarding its potential UIM claims and included records of Mr. Baker's medical treatments.  *See* Exhibits 3–6 to [#74].  Allied/Nationwide did not provide med-pay benefits based on those letters.

Mr. Baker received medical injections on November 2, 2011 from Grand Valley Surgical Center, for which he sought med-pay from Allied/Nationwide on November 7, 2011.  [#65-5].  Allied/Nationwide paid this claim on November 15, 2011.  [#65-6].

A letter to Allied/Nationwide dated April 6, 2012 from Mr. Baker's counsel argued that Allied/Nationwide confirmed it would provide med-pay coverage to Mr. Baker in September 2011.  [#74-9] at 1.  However, when Mr. Baker's treating center, the Rocky Mountain Orthopedic Associates ("RMOA"), billed for his treatments, it "had significant difficulty obtaining any response from Allied/Nationwide."  *Id.*  Subsequently, the Allied/Nationwide adjuster informed RMOA in March 2012 that "Allied/Nationwide would not pay any medical payment benefits to RMOA on Mr. Baker's behalf because he has filed lawsuit against Allied/Nationwide for his UIM benefits."  *Id.* at 1–2.  Sheryl Enright, an employer at RMOA, also confirmed this during her deposition.  [#74-10] at 22:11–23:3.  The letter requested a response from Allied/Nationwide "as to why it is now denying [Mr. Baker's] claim for medical payment benefits."  [#74-9] at 2.

On April 10, 2012, Mr. Baker moved to amend his complaint to add a claim for bad faith breach of contract for failure to provide med-pay benefits against Allied/Nationwide.  [##22, 23]. Mr. Baker submitted a second request for coverage on April 12, 2012.  [#65-7].  This request was paid by Allied/Nationwide on April 16, 2012.  [#65-8].  The third request was made on June 30, 2012, and Allied/Nationwide paid it on September 30, 2012.  [##65-9; 65-10].  This third payment exhausted the $5,000 med-pay limit.

### B.  Conclusions

Allied/Nationwide argues that its policy does not cover the med-pay benefits requests Mr. Baker submitted, because they were for treatment after July 2011 and thus outside the three-year coverage indicated in the Allied/Nationwide policy.  Nevertheless, Allied/Nationwide paid three requests despite the treatments' falling after July 2011.  Thus, it argues, even if med-pay benefits were owed after three years, Mr. Baker exhausted the $5,000 coverage.  Allied/Nationwide further argues that plaintiff's common law bad faith and unreasonable delay claims fail, because the requests were timely paid.

Mr. Baker responds that the three-year limit in the Allied/Nationwide policy is void pursuant to Colorado's statute mandating med-pay coverage, C.R.S. § 10-4-635.  Even if the limit is not void, Mr. Baker argues that he submitted a med-pay claim for treatment on April 29, 2011, which was before the three-year deadline and which would have exhausted the $5,000 coverage.  Mr. Baker claims Allied/Nationwide did not pay this claim without explanation and breached the contract.  Furthermore, Allied/Nationwide acted in bad faith when it denied med-pay coverage because Mr. Baker had filed this suit and then only begun paying Mr. Baker's claims once Mr. Baker amended his complaint to include bad faith claims.

First I address whether the Allied/Nationwide policy's three-year limit on med-pay is void as a matter of law.  The Colorado med-pay coverage statute, C.R.S. § 10–4–635, requires insurers to reserve $5,000 in med-pay benefits to pay "persons providing medically necessary and accident-related trauma care or medical care" unless insureds specifically opt out in writing. "Medical care" means "all medically necessary and accident-related health care and rehabilitation services . . . for which benefits under the terms of the medical payments coverage in the policy are payable."  § 10-4-635(5)(e).

If an insurance "policy provision violates public policy by attempting to 'dilute, condition, or limit statutorily mandated coverage[,]' then it may be void and unenforceable." *DeHerrera*, 30 P.3d at 173 (Colo. 2001) (quoting *Terranova*, 800 P.2d at 60).  A recent opinion by Judge Blackburn in *Countryman v. Farmers Ins. Exch.*, 865 F. Supp. 2d 1108, 1112–13 (D. Colo. 2012), upheld a two-year limitation on statutorily mandated med-pay coverage.  Judge Blackburn reasoned:

> A policy exclusion or limitation is not void simply because it narrows the circumstances under which coverage applies.  *Cruz v. Farmers Ins. Exchange*, 12 P.3d 307, 312 (Colo. App. 2000); *Farmers Ins. Exchange v. Chacon*, 939 P.2d 517, 520 (Colo. App. 1997).  "Even within the context of statutorily mandated insurance, insurers are free to include 'conditions and exclusions that are not inconsistent with' Colorado's mandatory insurance laws."  *Bailey v. Lincoln General Insurance Co.*, 255 P.3d 1039, 1047 (Colo. 2011) (quoting § 10–4–623(1), C.R.S.).  That an exclusion or limitation may not *further* the legislative intent of a statute does not render the exclusion or limitation void; instead, the exclusion is void only if it *contravenes* public policy.  *See Principal Mutual Life Ins. Co. v. Progressive Mountain Ins. Co.*, 1 P.3d 250, 255 (Colo. App. 1999).  Moreover, given Colorado's strong commitment to the freedom of contract, *Shelter Mutual Insurance Co. v. Mid–Century Ins. Co.*, 246 P.3d 651, 662 (Colo. 2011), "[t]he principle that contracts in contravention of public policy are not enforceable should be applied with caution and only in cases plainly within the reason on which the doctrine rests."  *Bailey*, 255 P.3d at 1045 (Colo. 2011).

*Id.* at 1111 (emphasis added).

I find Judge Blackburn's reasoning persuasive.  With Colorado's "strong commitment to the freedom of contract" in mind, *Bailey*, 255 P.3d at 1047, this Court concludes that Allied/Nationwide was free to include a time-limit exclusion that is not inconsistent with C.R.S. § 10–4–635 and does not contravene public policy.  "In the absence of statutory inhibition, an insurer may impose any terms and conditions consistent with public policy which it may see fit." *Bailey*, 255 P.3d at 1047.  Allied/Nationwide does not violate public policy by imposing a three-year time limitation on providing the mandated med-pay benefits.

Consequently, I turn to the issue of whether Allied/Nationwide is entitled to summary judgment because no reasonable jury could find that it breached its contract for failing to timely pay med-pay claims submitted by Mr. Baker before the expiration of the three-year limit, or that any breach was in bad faith or any denial of benefits unreasonable.

Mr. Baker does not dispute that Allied/Nationwide paid for three med-pay claims after the three-year umbrella expired.  The parties also do not dispute that Mr. Baker, through his counsel, sent several letters prior to July 2011, when the med-pay benefits would have expired according to the Allied/Nationwide policy terms.  The parties, however, do dispute whether those letters in fact made claims for med-pay benefits.

A letter from Mr. Baker's counsel dated June 10, 2010 states that "this letter is sent to advise you that Robert and/or Roberta Baker will make a claim against Allied Insurance for UM/UIM coverage."  [#74-3].  Subsequently, a letter from counsel dated August 27, 2010, which requests that Allied/Nationwide reconsider its initial rejection of Mr. Baker's claims for UIM/UM benefits, does make the claim that Mr. Baker "is also entitled to the Med Pay provisions of the policy."  [#74-5].

On May 2, 2011, Mr. Baker sent Allied/Nationwide all of his medical records and bills relating to the car accident in July 2008.  [#74-4].  This letter from counsel accompanying the records states that it "confirms our telephone conversation on April 29, 2011, regarding obtaining Allied's authorization to settle with the liability carrier, Viking Insurance."  *Id.* According to the letter, Allied/Nationwide "inquired about the UIM policy limits" that Mr. Baker carried with Allstate.  *Id.*  This letter makes no mention of claims for med-pay benefits.

On June 15, 2011, a letter from Mr. Baker's counsel states "[t]his letter shall serve as our settlement demand on behalf of Robert Baker for the UIM policy limits of $300,000.00."  [#74-6] at 1.  The letter references the documents sent along with the May 2, 2011 letter and provides a detailed summary of the medical treatments Mr. Baker had received to date.  [#74-6].  On the last page, under "Demand," the letter states "Mr. Baker makes a demand for Allied's UIM policy limits of $300,000."  *Id.* at 10.

Viewing the evidence in the light most favorable to the non-moving party, Mr. Baker has submitted sufficient evidence suggesting that these letters, at least when viewed in totality, constituted a demand for med-pay benefits that Mr. Baker made prior to the expiration of the three-year limit, and that the benefits were not paid by Allied/Nationwide.  Because genuine disputes exist over these material facts, the Court denies the Nationwide's motion for summary judgment on the claims for breach of contract.  The ultimate payment exhausted the med-pay limit but did not necessarily moot the breach of contract.

Allied/Nationwide's argument to dismiss Mr. Baker's bad faith breach of contract and unreasonable denial of benefits claims similarly fails because genuine disputes over material facts exist.  "Due to the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured,' an insurer's breach of the duty of good faith and fair

dealing gives rise to a separate cause of action arising in tort." *Goodson v. Am. Standard Ins. Co. of Wisconsin*, 89 P.3d 409, 414 (Colo. 2004) (quoting *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003)).   C.R.S. § 10-3-1116(1) also allows a "first-party claimant" like Mr. Baker to bring an action for reasonable attorney fees, court costs, and two times the covered benefit if his "claim for payment of benefits has been unreasonably delayed or denied."   *See also* C.R.S. § 10-3-1115(1)(a), (1)(b)(I).   "[A]n insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action."   C.R.S. § 10-3-1115(2).

"In determining whether an insurer's delay in paying benefits or its denial of benefits was reasonable, the jury may consider evidence that the insurer's conduct violated the UCSPA [Unfair Claims Settlement Practices Act]."   *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 971 (Colo. App. 1996), *aff'd*, 955 P.2d 1008 (Colo. 1998) (citing C.R.S. § 10-3-1113(4)). The UCSPA enumerates various prohibited claim settlement practices, including willfully failing "to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage."   C.R.S. § 10-3-1104(1)(h)(XIII).

As indicated, there is no dispute that Allied/Nationwide paid his November 2011 claim within eight days; his April 2012 claim within 4 days; and his June 2012 claim within three months.   Mr. Baker instead challenges Allied/Nationwide's previous denial or delay in providing med-pay benefits on the grounds that Mr. Baker had filed the UIM suit and its payment of the claims only after plaintiff amended his complaint to add a bad faith claim.   Although Allied/Nationwide insists that it did not deny the benefits on account of Mr. Baker filing a suit, Mr. Baker has submitted evidence that creates a genuine dispute over that fact.   *See* Deposition

of Sheryl Enright, [#74-10] at 22:11–23:3; *see also* April 6, 2012 Letter, [#74-9].[4]  Furthermore, as discussed above, Mr. Baker has submitted evidence suggesting that Allied/Nationwide rejected claims for med-pay benefits prior to July 2011, even if the later payments are considered reasonable and timely.

"The fact that an insurer eventually pays an insured's claims will not prevent the insured from filing suit against the insurer based on its conduct prior to the time of payment." *Goodson*, 89 P.3d at 414.  A genuine dispute exists over whether Allied/Nationwide used nonpayment of med-pay benefits as a way to "influence settlements under other portions of the insurance policy coverage," when Allied/Nationwide should have known that med-pay coverage was owed under Colorado law.  C.R.S. § 10-3-1104(1)(h)(XIII).

Again, viewing this evidence in the light most favorable to Mr. Baker, I conclude that a genuine dispute of material fact exists on the claims for bad faith breach of contract and unreasonable denial of med-pay benefits by Allied/Nationwide.  Accordingly, the Court DENIES Allied/Nationwide's Motion for Partial Summary Judgment as to Medical Payments Coverage Claims [#65].

## V.  Allied and Nationwide's Motion for Summary Judgment Regarding Underinsured Motorist Claims [#66], joined by Allstate [#67]

### A.  Relevant Facts

Mr. Baker filed for UIM benefits under both his Allstate and Allied/Nationwide policies. Mr. Baker, through counsel, exchanged numerous letters with both insurance companies regarding his UIM coverage.  *See* Exhibits 2–32 to [#73].  Because the facts relating to bad faith or unreasonable delay are particular to each insurer, I address them separately.

---

[4] Mr. Baker has also tendered an expert report by an insurance practices expert analyzing the claims and concluding that Allied/Nationwide willfully violated various subsections of the UCSPA.  [#74-12] at 12–13.

*Allied/Nationwide*

Mr. Baker originally sent a notice of intent to file for UIM benefits on June 10, 2010 to Allied/Nationwide.  [#73-2].  On August 27, 2010, Mr. Baker sent another letter disputing Allied/Nationwide's apparent response to the June 10 letter that Allied/Nationwide did not owe coverage for UIM benefits under its business policy.  [#73-3].  Mr. Baker cited *DeHerrera* in support of his claim that he is "entitled to proceed with an underinsured claim."  *Id.*

After notice of the settlement with Ms. Cook and after Allied/Nationwide agreed to waive any subrogation claims against Ms. Cook [#73-4], Mr. Baker sent additional requests for UIM coverage on May 11, 2011 [#73-6], and again on June 15, 2011 along with medical treatment summary to date [#73-7].  Nationwide once more denied UIM coverage on July 7, 2011, stating: "it is our opinion that the Allstate policy is primary for this accident and that the Nationwide Mutual policy would apply on an excess basis."  [#73-8].  It is unclear what investigation, if any, that Allied/Nationwide conducted into the claims that Mr. Baker had, beyond denying coverage on belief that Allstate's policy was primary.

*Allstate*

Allstate corresponded more frequently with Mr. Baker for over a year after his initial notice to file, negotiating the amount of coverage it was willing to offer.  Mr. Baker's notice of intent to file for UIM benefits to Allstate was sent on August 27, 2010. [# 73-10].  On November 29, 2010, Mr. Baker provided medical records showing damages and losses he had sustained. [#73-11].

On April 26, 2011, Allstate provided permission to Mr. Baker to settle his claims with Ms. Cook.  [#73-12].  On May 2, Mr. Baker sent his medical records to Allstate in support of his UIM claim.  [#73-13].  Mr. Baker sent another demand letter on May 11.  [#73-14].  On May 26,

Allstate responded only with the statement that "[w]e are in the process of concluding the claim." [#73-15]. The letter also stated that Allstate "will continue to update you on the status of the claim until it is resolved." *Id.*

Mr. Baker, through counsel, urged Allstate not to close the case by calling on June 14 [#73-16], and by sending another long letter with his injuries and medical treatments on June 16 [#73-17]. Another short letter from Allstate on July 22, 2011 reports that their "medical and or wage investigation is continuing." [#73-18].

Finally, on August 9, 2011, Mr. Baker sent another letter complaining that "over three months have lapsed without Allstate completing its evaluation" and that the delay is unreasonable. [#73-19]. That same day Bill Camacho Mr. Baker's claims adjuster, replied that he has completed his review and offered a nominal settlement of $2,500. [#73-20]. Mr. Camacho cited an apparent "two month delay before [Mr. Baker] sought treatment for the injuries he sustained in this accident" and records from September 2008 showing that Mr. Baker had been continuing his work. He stated that the medical records suggested that there has been no impairment and no wage loss. *Id.*

On August 15, Mr. Baker responded, citing to other medical results that show disc bulges, spondylolisthesis, degenerative disc disease, impingement syndrome, early degenerative changes, and root injury on his cervical spine. [#73-21]. Mr. Baker also supported his claim by stating that his doctors have recommended additional treatments, such as injections and use of a cervical collar. *Id.* On August 19, 2011, Allstate increased its offer to $3,500. [#73-22]. The bargaining went back and forth [##73-23, 73-24] until Mr. Baker demanded $95,750 on September 1, 2011 [#73-25] and Allstate offered $5,000 on September 20, 2011 [#73-28]. Plaintiff replied on November 2 that Mr. Baker will require injections that by themselves will

exceed $5,000. [#73-29]. Allstate responded on November 3, 2011 that it will consider

additional reports and medical bills if there are any. [#73-30]. Allstate on November 15, 2011

finally stated that if plaintiff rejects the $5,000 offer, it will move forward with an independent

medical exam ("IME"). [#73-31]. Plaintiff filed the lawsuit on December 8, 2011. *See* [#1].

Allstate finally had an IME done on September 19, 2012. [#75-1].

### B. Conclusions

Allied/Nationwide, partly joined by Allstate [#67], moves for summary judgment on Mr.

Baker's claims for breach of contract, bad faith, and unreasonable delay as to the UIM benefits.

[#66]. As an initial matter, Allied/Nationwide argues that the claims against it are not ripe if the

Court determines that Allied/Nationwide is the excess UIM insurer. Because the Court has

resolved Nationwide and Allstate's motions #40 and #41 and concluded that the two insurers are

co-primary for UIM benefits, Allied/Nationwide's argument is moot.

As to the common law bad faith claims and statutory unreasonable delay claims, the

defendants argue that summary judgment is appropriate here because no genuine dispute of

material fact exists over the reasonableness of their actions, citing the following reasons: (1) the

only dispute between the insurers and Mr. Baker is a value dispute; (2) a valid and complete

claim has not yet been submitted, and no UIM benefits are yet owed; and (3) the duty to

negotiate was suspended by this litigation and there is no duty to advance payment. Allstate

appears to concede in its reply brief that it is only challenging the bad faith claims as to UIM

benefits and not the statutory unreasonable delay claims under C.R.S. §§ 10-3-1115, 10-3-1116.

[#75] at 4.

*Applicable Law*

"Due to the special nature of the insurance contract and the relationship which exists between the insurer and the insured," an insurer owes at common law a duty of good faith and fair dealing, whose breach may give rise to a separate cause of action arising in tort. *Goodson*, 89 P.3d at 414 (quoting *Cary*, 68 P.3d at 466). "Broadly speaking, '[t]his duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer.'" *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1112 (D. Colo. 2012) (quoting *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010)).

"When an insured sues his or her insurer for bad faith breach of an insurance contract, the insured must prove that (1) the insurer acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Sanderson*, 251 P.3d at 1217. This standard of care balances "the right of an insurance carrier to reject a non-compensable claim submitted by its insured and the obligation of such carrier to investigate and ultimately approve a valid claim." *Goodson*, 89 P.3d 409 at 415 (internal citation and quotation marks omitted).

Colorado also provides a statutory claim for unreasonable delay or denial of payment of claims. *See* C.R.S. §§ 10-3-1115(1)(a), 10-3-1116(1). A "first-party claimant" like Mr. Baker may bring an action for fees, costs, and double damages if his "claim for payment of benefits has been unreasonably delayed or denied." C.R.S. § 10-3-1116(1). "[A]n insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." C.R.S. § 10-3-1115(2).

The legal standard differs slightly between a common law bad faith claim and a statutory claim for unreasonable[5] delay or denial of payment of a claim.  *Vaccaro v. Am. Family Ins. Group*, 275 P.3d 750, 760 (Colo. App. 2012); *see also Etherton v. Owners Ins. Co*., No. 10-CV-00892-PAB-KLM, 2013 WL 68702, at *4 (D. Colo. Jan. 7, 2013) (burden of proving statutory claim is less onerous than that of common law claim).  "[T]he only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis."  *Vaccaro*, 275 P.3d at 760.  "Thus, evidence of bad faith that shows that an insurer acted unreasonably would also support a statutory claim."  *Etherton*, 2013 WL 68702, at *4.  A common law claim requires the additional proof of the insurer's knowledge or reckless disregard as to the validity of an insured's claim.  *See Sanderson*, 251 P.3d at 1217.

The reasonableness of an insurer's conduct is "determined objectively, based on proof of industry standards."  *Goodson*, 89 P.3d at 415.  "The aid of expert witnesses is often required in order to establish objective evidence of industry standards."  *Id.*  The fact that an insurer's reason for denying or delaying payment of a claim was "fairly debatable" weighs against finding that the insurer acted unreasonably.  *Sanderson*, 251 P.3d at 1217; *Vaccaro*, 275 P.3d at 759; *Zolman v. Pinnacol Assur.*, 261 P.3d 490, 496 (Colo. App. 2011).  Furthermore, in cases where "an insurer maintains a mistaken belief that a claim is not compensable, it may still be within the scope of permissible challenge, even if the insurer's belief turns out to be incorrect."  *Sanderson*, 251 P.3d at 1217.

Additionally, C.R.S. § 10-3-1113(4) provides that "[i]n determining whether an insurer's delay or denial was reasonable, the jury may be instructed that willful conduct of the kind set forth in section 10-3-1104(1)(h)(I) to (1)(h)(XIV) is prohibited and may be considered if the

---

[5] The Court has amended this order to correct a typo contained in the original order, changing "reasonable" to "unreasonable".

delay or denial and the claimed injury, damage, or loss was caused by or contributed to by such prohibited conduct." *See also Peiffer*, 940 P.2d at 971 (jury may consider if conduct violated Unfair Claims Settlement Practices Act ("UCSPA)). The UCSPA prohibits, *inter alia*, the following claim settlement practices:

> "Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies," § 10-3-1104(1)(h)(III);
>
> "Refusing to pay claims without conducting a reasonable investigation based upon all available information," § 10-3-1104(1)(h)(IV);
>
> "Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed," § 10-3-1104(1)(h)(V);
>
> "Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds," § 10-3-1104(1)(h)(VII); and
>
> "Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement, § 10-3-1104(1)(h)(XIV).

"What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Vaccaro*, 275 P.3d at 759.

> *Duty Suspended Pending Litigation*

I first address the insurers' argument that their duty of good faith and fair dealing was suspended by this litigation, and that the insurers then had no duty to negotiate or advance payment.

In *Bucholtz v. Safeco Ins. Co. of Am.*, 773 P.2d 590, 593 (Colo. App. 1988), the Colorado Court of Appeals held that claims for bad faith breach of insurance contract were properly dismissed on summary judgment because the plaintiff had demanded arbitration, thereby suspending the insurance company's duty to negotiate settlement. "[A]lthough the insurer's duty

of good faith and fair dealing continues unabated during the life of the insurer-insured

relationship, any obligation to negotiate as a reflection of good faith may be suspended

temporarily by collateral circumstances." *Id.* at 593.  The court noted that "[t]he only

disagreement between the parties is the amount of payment which may be owing under the terms

of the policy, the very issue the arbitration clause was intended to resolve." *Id.*  (quotation marks

omitted).

Furthermore, defendants cite Colorado Division of Insurance Regulation 5-1-14, which

states:

> All insurers authorized to write property and casualty insurance policies in
> Colorado, shall make a decision on claims and/or pay benefits due under the
> policy within sixty (60) days after receipt of a valid and complete claim unless
> there is a reasonable dispute between the parties concerning such claim, and
> provided the insured has complied with the terms and conditions of the policy of
> insurance.

3 Colo. Code Regs. 702-5:5-1-14, § 4(A)(1).  A valid and complete claim is deemed "received"

by the insurer when "[a]ny litigation on the claim has been finally and fully adjudicated." *Id.* §

4(A)(2)(a)(7).  Moreover, a "reasonable dispute" may include litigation being commenced on the

claim. *Id.* § 4(A)(2)(b)(6).

In accordance with both *Bucholtz* and the Colorado Division of Insurance Regulations, I

conclude that where an adversarial proceeding is filed and a genuine disagreement[6] as to the

amount of compensable damages exists, the duty to negotiate is suspended, and there is no duty

to advance payment of claims.  *See Rabin*, 863 F. Supp. 2d 1107, 1113 (D. Colo. 2012)

(accepting parties' argument that "an insurer's derivative duty to negotiate, settle, or pay an

insured's claim is suspended when two elements are present: (1) an adversarial proceeding is

filed, and (2) a genuine disagreement as to the amount of compensable damages exists").

---

[6] The Court has amended this order to correct a typo contained in the original order, changing "agreement" to
"disagreement".

After my resolution of the primacy issue above, the parties remain in genuine dispute over what amount of UIM benefits, if any, is owed from both co-primary insurers.  Therefore, Allied/Nationwide and Allstate's duty of good faith and fair dealing was suspended on December 8, 2011, when Mr. Baker filed this action.

Nonetheless, this determination that the duty to negotiate, settle, or pay has been suspended after December 8, 2011 does not dispose of Mr. Baker's common law bad faith claims nor his statutory unreasonable delay claims.  *See Rabin*, 863 F. Supp. 2d at 1114 (granting summary judgment motion only in part where claims not based strictly upon conduct occurring after filing of suit); *see also Toy v. Am. Family Mut. Ins. Co.*, No. 12-CV-01683-PAB-MJW, 2012 WL 5290266, at *2 (D. Colo. Oct. 26, 2012).  Mr. Baker has challenged the insurers' conduct prior to his filing of this action, which I address below.

### *Duty Prior to Litigation*

First I address whether Allied/Nationwide and Allstate owed any duty to Mr. Baker while liability was pending against Ms. Cook or while the insurers disputed the primacy of UIM coverage.  It is well-settled that the "duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship."  *Sanderson*, 251 P.3d at 1217.

Defendants have cited to cases following *Freeman v. State Farm Mut. Auto. Ins. Co.*, 946 P.2d 584, 585–86 (Colo. App. 1997).  *See Zbegner v. Allied Prop. & Cas. Ins. Co.*, 455 F. App'x 820 (10th Cir. 2011); *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 573, & n.4 (Colo. App. 2003).  The court in *Freeman* held that "until a recovery is made from the at-fault party, the actual amount of coverage to which an insured is entitled under an UIM policy cannot be known," and insurer therefore "may require judgment or settlement from the underinsured driver

as a precondition to a claim for UIM benefits without diluting, conditioning, or unduly limiting statutorily mandated UIM coverage."  946 P.2d at 585–86.

The above cases cited by defendants address a statute, C.R.S. § 10-4-609(5), that has since been repealed, effective in January 2008 before Mr. Baker's accident.  *See* 2007 Colo. Sess. Laws Ch. 413, § 2; *see also Zbegner*, 455 F. App'x at 824–25, & n.4.  C.R.S. § 10-4-609(1)(c) now provides that "[t]he amount of the coverage available pursuant to this section *shall not be reduced by a setoff from any other coverage*, including, but not limited to, legal liability insurance, medical payments coverage, health insurance, *or other uninsured or underinsured motor vehicle insurance*." (emphasis added).  The amended statute "appl[ies] to policies issued or renewed on or after" January 1, 2008.  *See* 2007 Colo. Sess. Laws Ch. 413, § 4.

A recent Colorado Court of Appeals decision examines the changes in § 10-4-609. *Jordan v. Safeco Ins. Co. of Am.*, No. 12CA0934, 2013 WL 1240872 (Colo. App. March 28, 2013).  The court stated that the "plain and unambiguous" language of the amended statute meant that "the insurer's obligation to pay benefits is now triggered by exhaustion of the tortfeasor's 'limits of . . . legal liability coverage,' not necessarily any payment from or judgment against the tortfeasor."  *Id.* at ¶ 29 (quoting *Vignola v. Gilman*, No. 10-CV-2099-PMP, 2013 WL 495504, at *13 (D. Nev. Feb. 8, 2013).  Therefore, Colorado's UIM statute allows an injured party to "stack" his UIM coverage, eliminating the rationale of those cases that held benefits are not owed until the third-party liability was determined.  *Id.* at ¶ 30.  Insurers are also not responsible for any "gap" between the ultimate settled amount with the tortfeasor and the amount of that tortfeasor's liability policy limit.  *Id.*  An insurer is only responsible "for damages exceeding the tortfeasor's liability policy limit, subject only to the UIM coverage limit in the insured's policy."  *Id.*

Allied/Nationwide, at oral argument, has urged that the court still adopt the rationale behind the *Freeman* cases, and hold that the insurers' conduct could not have been unreasonable or in bad faith where the amount owed to Mr. Baker could not be determined due to pending recovery from the tortfeasor or pending coverage from the other UIM insurer. *See* [#76] at 4.  As for waiting until recovery from the tortfeasor, the amended statute clearly allows the determination of UIM benefits without it.  Under the amended statute, Allstate and Allied/Nationwide could have begun their analysis of UIM benefits owed without ever knowing what Ms. Cook's settlement was with Mr. Baker, even if it was below her $25,000 limit.  In any event, Allied/Nationwide has not shown any facts that it even began to investigate whether Mr. Baker's claims exceeded Ms. Cook's $25,000 policy limit.

As to the question of primacy, Allied/Nationwide contends that it was under a reasonable belief that its policy only provided excess UIM coverage; the amount of UIM coverage owed could not have been determined until the amount Allstate owed was determined (or until this Court found it co-primary with Allstate).[7]  I conclude that a genuine dispute of material fact exists over whether Allied/Nationwide was reasonable in its delay to investigate or negotiate the claims based on its belief that it was the excess carrier, and whether that delay was in bad faith.

As early as August 27, 2010, Mr. Baker cited *DeHerrera* to support his claim that Allied/Nationwide had no legal cause to reject his UIM claim.  [#73-3].  Allied/Nationwide has produced an "Activity Log" purporting to show through Allied/Nationwide's own notes that Allstate's adjuster "agreed that [Allied/Nationwide's] policy is excess over the Allstate policy," and that counsel for Mr. Baker "has not disputed this."  [#76-3.]  Nonetheless, the date on this

---

[7] The Court notes that this argument is not available to Allstate where Allstate has conceded in its briefing on the primacy motions above that it would at least be co-primary with Allied/Nationwide.

"activity" is July 25, 2011, almost a year after Allied/Nationwide initially refused to pay UIM benefits and after it received notice that Mr. Baker intended to object to this refusal based on *DeHerrera*. Notably, Allied/Nationwide cannot use this sole document to support any claim that it relied on statements by Allstate or Mr. Baker—this log occurred two weeks after Allied/Nationwide had already denied UIM coverage in its final July 7 letter. [#73-8]. There are not the appropriate circumstances to deviate from the general rule that reasonableness is a question for the jury. *Vaccaro*, 275 P.3d at 759.

Lastly, I turn to whether the bad faith or unreasonable delay claims must be dismissed because the only dispute between the insurers and Mr. Baker is a value dispute. Both insurers argue that their conduct was not unreasonable or in bad faith because their challenges to Mr. Baker's claims were mere evaluation disputes that were "fairly debatable."[8] This argument is likewise not compelling.

The Colorado Court of Appeals has declined to read into "fairly debatable" the meaning that "an insurer can avoid liability for unjustified denials of benefits simply by framing each denial as a valuation dispute." *Vaccaro*, 275 P.3d at 760. Instead, "*Bucholtz, Zolman,* and *Sanderson* stand for the proposition that a genuine difference of opinion over the value of an insurance claim *weighs against* a finding of bad faith." *Id.* (emphasis added). In fact, "every lawsuit over insurance coverage is a valuation dispute to the extent that the parties disagree about how much should be paid under a policy, or whether the policy provides for coverage at all." *Id.*

---

[8] The insurers also repeatedly cite to *Bucholtz* in support of their contention that a valuation dispute alone cannot amount to a bad faith claim. The court in *Bucholtz* simply does not go that far. The decision stands for proposition that after the plaintiff initiates arbitration to resolve a valuation dispute, "the very issue the arbitration clause was intended to resolve," the duty to continue negotiations is suspended. 773 P.2d at 593. The case cannot support the insurers' argument that they have no duty to act reasonably and in good faith prior to litigation, just because a valuation dispute exists.

Allowing every "evaluation dispute" to escape bad faith or unreasonable delay claims would allow insurers the free reign to "refuse to pay any claim where money is at issue." *Id.* "Fair debatability," therefore, is not outcome determinative; it is a necessary but not always a sufficient condition for finding reasonableness. *Id.*; *Sanderson*, 251 P.3d at 1119.

Here, I am persuaded that a genuine dispute of material fact exists over whether the insurers' handling of Mr. Baker's claims constitutes bad faith or an unreasonable delay. As to Allied/Nationwide, it has provided little evidence that it investigated Mr. Baker's claims at all, beyond its assertion that it is the excess carrier, which I addressed above. Allied/Nationwide seems to argue that it has not submitted any of its claim evaluation records because those documents were listed on its privilege log and because they are irrelevant to the valuation of Mr. Baker's claims. [#76] at 9. While the Court agrees that this information would not be dispositive of the *amount* ultimately owed to Mr. Baker, *see, e.g.*, *Silva v. Basin Western, Inc.*, 47 P.3d 1184, 1189–90 (Colo. 2002), Allied/Nationwide has not met its burden on its motion to show an absence of dispute over whether it handled the *investigation* into the amount properly, let alone investigated at all. *See* C.R.S. § 10-3-1104(1)(h)(IV).

As to Allstate, it admits that only after Mr. Baker's settlement with Ms. Cook did it "[begin] to assemble the documents provided to it by plaintiff's current attorneys and began the process of reviewing plaintiff's claims." [#75] at 3. In fact, Allstate did not begin reviewing Mr. Baker's claims for over two months until July 21, 2011. Deposition of William Camacho, [#73-33] at 110:7–19. Mr. Camacho, the Allstate claims adjuster, even agrees that this delay complies with his duty as an adjuster to promptly evaluate the claim. *Id.* *See* C.R.S. § 10-3-1104(1)(h)(III).

Mr. Baker also challenges that Allstate did not consider some evidence of his injuries or damages, "including his bulging discs and nerve root injury, his high Oswestry score, his past lost wages, and his shortened work life or diminished earning capacity damages." [#73-1] at 7. *See* Deposition of William Camacho, [#73-33] at 154:20–155:5, 162:6–19, 164:20–23. Allstate appears to attribute any delay to the fact that it was "unable to gather medical records until same were provided by plaintiff's counsel." [#75] at 2. Allstate also claims that it "made repeated requests" for a CT scan of Mr. Baker's cervical spine that was never provided, although Allstate chose to "giv[e] the benefit to Mr. Baker, and included the cost of the CT scan." *Id.* at 3. Allstate, however, has not cited to any affidavits or exhibits confirming these "repeated requests" or when they occurred. To the contrary, Mr. Camacho stated that he had the ability to request Mr. Baker's records since February 12, 2009, but did not do so despite recognizing his duty to. Deposition, [#73-33] at 66:15–67:10. Furthermore, the Court finds unpersuasive any apparent reliance by Allstate on its IME to show that it denied coverage based on its belief that Mr. Baker's complaints were subjective. [#75] at 2. The IME was completed on September 19, 2012, well over a year after the initial offers by Allstate. *See* [#75-1].

I conclude that Mr. Baker has presented sufficient evidence on a summary judgment motion to dispute whether Allstate ignored evidence supporting his claims and whether its investigation was prompt or thorough. *See Vaccaro*, 275 P.3d at 760 (upholding denial of post-verdict motions where "a reasonable jury could have found that defendant refused to consider evidence showing plaintiff was entitled to additional compensation"); *Sanderson*, 251 P.3d at 1220. Whether Allstate's conduct amounts to bad faith remains a fact dispute to be resolved by the jury.

Accordingly, the Court GRANTS IN PART and DENIES IN PART Allied/Nationwide's Motion for Partial Summary Judgment Regarding Underinsured Motorist Claims [#66], in which defendant Allstate joined [#67].  Mr. Baker's bad faith and unreasonable delay claims remain to the extent that they address the insurers' conduct prior to the filing of litigation.

**Order**

1.  Defendant Allstate's Motion for Partial Summary Judgment [#40] is GRANTED.

2.  Defendant Nationwide's Motion for Partial Summary Judgment Regarding Primacy [#41] is DENIED.

3.  Defendant Allied and Nationwide's Motion for Summary Judgment as to Medical Payments Coverage Claims [#65] is DENIED.

4.  Defendant Allied and Nationwide's Motion for Summary Judgment Regarding Underinsured Motorist Claims [#66], in which defendant Allstate joined [#67], is GRANTED IN PART and DENIED IN PART.

DATED this 12th day of June, 2013 nunc pro tunc 5th day of April, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge